

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed February 7, 2007            **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| JORGE E. VILLALBA, JR., | § § | CASE NO. 05-84389-BJH-7 |
| DEBTOR | § § | |
| RALPH NUGENT AND MARC CHAMBERS, | § § § | |
| Plaintiffs | § § | |
| VS. | § | ADVERSARY NO. 06-3237 |
| JORGE E. VILLALBA, JR., | § § § | |
| Defendant | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Ralph Nugent ("Nugent") and Marc Chambers ("Chambers") initiated this adversary proceeding seeking a determination that an arbitration award entered against defendant Jorge E. Villalba, Jr. ("Villalba") in their favor is non-dischargeable under section 523(a)(2)(A)

and (a)(4) of the Bankruptcy Code. Trial was held on November 29, 2006, and January 12, 2007. On December 15, 2006, Chambers filed his motion seeking to dismiss his claim against Villalba. The Court entered its order approving the dismissal on January 22, 2007. The findings and conclusions set forth herein, therefore, relate solely to Nugent's claims against Villalba.

**Statement of Facts**

1. Nugent is, and has been for many years, employed as a warehouse distribution manager; he presently earns a salary of approximately $45,000 a year.

2. Over a period of thirty years of his employment, Nugent saved approximately $200,000 for his retirement, which he placed in certificates of deposit.

3. To insure the safety of his savings, he had held certificates of deposit at two different banks in order to stay within the $100,000 FDIC insurance coverage. In early 2000, just prior to meeting Villalba, Nugent had moved his retirement savings (or at least a portion of the savings) to Bear Stearns Brokerage. He was not satisfied with the service he was provided at Bear Stearns and wanted to invest his savings in a fashion that would potentially earn him a greater return.

4. Nugent was introduced to Villalba by Chambers. Chambers and Villalba knew one another socially; they were members of the same country club where they had been golfing partners.

5. Nugent initially talked to Villalba by phone, at which time he told Villalba that his retirement savings had been placed in certificates of deposit and that he desired to obtain a greater return on his savings. Villalba agreed to manage and invest Nugent's retirement savings.

6. On March 31, 2000, Nugent signed a "Correspondent New Account Form" for purposes of initiating and opening an account with Villalba and the company with which he was

employed, American Investment Services. Nugent signed the form with the questions regarding his investment experience and risk tolerance left blank.

7. Nugent testified that the form was completed after he signed it. The completed information includes a checked-box that Nugent's risk tolerance was "high" and that his investment experience was "extensive." He assumes that Villalba completed the form sometime after he signed the form.

8. Nugent's testimony concerning the completion of the form is credible. First, Nugent carefully reviewed the form at the time he signed it as he corrected the spelling of his first name from "Ralf" to "Ralph." He testified that he would have likewise noticed and corrected the boxes for risk tolerance and investment experience had they been checked at the time he signed the form. Next, Villalba never testified to rebut Nugent. Nugent's status as a middle class worker and his history in both saving the $200,000 over a period of thirty years and in placing it in certificates of deposit is not in character with someone who wants to invest his life savings in risky and volatile investment schemes. Even more to the point, Nugent did not have "extensive" investment experience.

9. Villalba had other complaints lodged against him with the National Association of Securities Dealers ("NASD") prior to Nugent opening his account. Villalba had previously been fined, censured, and suspended for "unauthorized trades and excessive transactions in the accounts of public customers without the basis of facts." Pl.'s Ex. 17. Specifically, Villalba served a five-day suspension from the NASD for the period of March 17, 1997, to March 21, 1997; he paid a fine of $15,000 which was due July 20, 1998. *Id*.

10. Nugent was not aware of the prior complaints against Villalba and the prior sanctions

issued against him. Villalba did not disclose the sanctions to Nugent prior to opening Nugent's account.

11. On or about August 12, 2000, Nugent signed an "Account Agreement and Application" which was directed to Dain Rauscher Inc., a brokerage house. Villalba insisted that Nugent sign this document. The document authorized Villalba to purchase stocks on margin on Nugent's behalf. Pl.'s Ex. 2. Villalba never explained this document to Nugent and Nugent did not understand its import or, specifically, that it authorized the purchase of stocks on margin on his behalf. Villalba's insistence that Nugent sign the document was somewhat confusing to Nugent because Villalba was not employed by Dain Rauscher.

12. Purchasing stocks "on margin" authorized Villalba to incur debt for the purchase of stocks in Nugent's name. The risk of such activity, which was never explained to Nugent, is that if the stock price goes down after its purchase, the stock is foreclosed and the investment is potentially lost. Villalba never explained to Nugent why he was purchasing stocks on margin, much less the various risks associated with doing so.

13. Prior to Nugent signing the Account Agreement and Application with Dain Rauscher, Villalba had already purchased in excess of $38,000 in stocks on margin through Dain Rauscher. *See* Pl.'s Ex. 3. Such purchases by Villalba were, therefore, unauthorized and improper at the time they were made.

14. In addition to purchasing stocks on margin on Nugent's behalf, Villalba engaged in "day trading" of stocks on behalf of Nugent.[1] Villalba never advised Nugent that he was

---

[1] "Day trading" in stocks has been defined as an overall trading strategy characterized by the regular transmission by a customer of intra-day orders to effect both purchase and sale transactions in the same security or securities. *See In re Rea*, 245 B.R. 77, 81 (Bankr. N.D. Tex. 2000).

investing his retirement funds through the practice of day trading. Nugent did not authorize Villalba to invest his savings in such fashion.

15. Nugent requested that Villalba purchase stock in a company named DataReturn Corporation. Chambers had recommended to Nugent that he purchase the DataReturn stock. Villalba did purchase the DataReturn stock as directed by Nugent, but then proceeded to engage in numerous follow-up sales and purchases of such stock. *See* Pl.'s Ex. 3.

16. Villalba's investment methods involving Nugent's retirement funds resulted in Nugent losing in excess of $170,000. Villalba failed to apprise Nugent of the magnitude of the losses incurred while handling Nugent's savings.

17. Nugent and Chambers filed a complaint against Villalba with the NASD in August 2001. The complaint resulted in an arbitration through the NASD Dispute Resolution program. Chambers and Nugent asserted the following causes of action: breach of contract and warranty; violation of the Texas Deceptive Trade Practices Act; violation of the Securities Exchange Act; violation of the Texas Securities Act; violation of section 27.01 of the Texas Business and Commerce Code; intentional and negligent misrepresentation; breach of fiduciary duty; negligence and gross negligence. Pl.'s Ex. 20. The causes of action arose out of the asserted "excessive, unauthorized and unsuitable trading in [Chambers's and Nugent's] accounts, including the use of margin and short-term trading in various stocks and other securities." *Id*. Villalba (and other defendants) raised various defenses. *Id*.

18. After a three-day arbitration, the arbitration panel awarded Nugent compensatory damages of $171,962.10, plus interest of $28,124.13, and attorney's fees of $64,819.44, for a total award of $264,905.67. *Id*.

19. Nugent has not collected any of the awarded amount from Villalba. The award constitutes Nugent's claim in this bankruptcy case.

20. If appropriate, these findings of fact shall be considered conclusions of law.

### Conclusions of Law

21. The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

22. Nugent contends that his claim should be declared non-dischargeable under section 523(a)(2)(A) and (a)(4) of the Bankruptcy Code (11 U.S.C.). Villalba denies that he committed fraud in handling Nugent's account and, in support of his position, points to the arbitration award which makes no specific finding of fraud. While the defense of collateral estoppel was not explicitly pleaded by Villalba, Villalba's argument is, in effect, an estoppel defense based on what the arbitration award *does not* say.

23. A creditor objecting to the dischargeability of a debt under one of the exceptions to discharge set forth at section 523 of the Bankruptcy Code has the burden to establish the elements of the applicable exception by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286-88 (1991).

### Section 523(a)(4) Claim

24. The Court considers first Nugent's claim under section 523(a)(4), which provides that an individual debtor will not receive a discharge of any debt for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). Given the facts of the instant case, the Court considers the prior opinion of this court, *In re Rea*, 245 B.R. 77 (Bankr. N.D. Tex. 2000) (Judge Steven A. Felsenthal presiding), as controlling.

25. A fiduciary under 523(a)(4) involves a relationship arising out of a technical or express trust. *Id*. at 87, citing *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998) and *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934).

26. Villalba was "'engaged in the business of effecting transactions in securities for the account of others.'" *Id*. at 88, citing the Securities and Exchange Act, 15 U.S.C. § 78c(a)(4). He engaged in such activity on Nugent's behalf. Villalba was, therefore, acting as a securities broker in his relationship with Nugent. *Id*.

27. Villalba effected sales and purchases of securities on Nugent's behalf with little or no input from Nugent. He, therefore, had discretion to determine the purchases and sales of securities on Nugent's account.

28. Villalba owed a fiduciary duty to Nugent. *Id*. As Nugent transferred his retirement savings to Villalba, creating a trust *res*, and Villalba was a fiduciary with trust-like duties, a technical trust under the law existed. *Id*. at 89. The transactions effected by Villalba on Nugent's behalf occurred after the establishment of the technical trust. *Id*.

29. As a fiduciary under a technical trust, Villalba should have, at a minimum, told Nugent of the risks associated with day trading and trading on margin. Given that Nugent had no experience in or knowledge of investing in securities, Villalba's decision to engage in risky investment methods cannot be justified. Nugent was not in a position to risk losing the entirety of his savings through risky investments; the risks associated with day trading and trading on margin can be and should have been fully explained to Nugent so that he understood the risks of such activities. *Id*. Villalba failed to do this. Villalba's fiduciary obligations and duties are best described by the court in *Rea*:

> For a broker generally, the fiduciary obligation imposes a duty to recommend securities suitable for the customer. The broker has a duty to provide the customer with all information relevant to the affairs the customer instructed to the broker. When the broker's services include providing investment advice, the broker has the duty of making recommendations in the best interest of the customer. . . .For brokers handling discretionary accounts, while not needing prior authorization for each transaction, the broker has a duty to manage the account in a manner directly comporting with the needs and objectives of the customer as stated in the authorization papers or as apparent from the customer's investment and trading history; . . . and to explain forthrightly the practical impact and potential risks of the course of dealing in which the broker is engage.

*Id*. at 89-90.

30. Under section 523(a)(4), a defalcation is a willful neglect of a fiduciary duty, even if not accompanied by fraud or embezzlement. *Id*. at 89.

31. Villalba willfully neglected his duties to Nugent. Indeed, the Court concludes that Villalba acted dishonestly and engaged in investment practices with Nugent's savings that were not in Nugent's best interest and did not remotely comport with Nugent's needs and objectives. The Court can only conclude that Villalba was gambling with Nugent's money as a means to profit himself. The Court draws this conclusion, in part, because Villalba failed to testify and offer any explanation for his conduct and treatment of Nugent.

32. Villalba committed acts of defalcation while acting in fiduciary capacity. *Id*. at 90.

### Section 523(a)(2)(A) Claim

33. Section 523(a)(2)(A) states in relevant part:

> [a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud,"

as used in the dischargeability exception, have acquired the meaning of terms of art and are common law terms. *See In re Mercer*, 246 F.3d 391 (5th Cir. 2001), citing *Field v. Mans*, 516 U.S. 59 (1995).

34. For a debt to be nondischargeable under the discharge exception for debts obtained by false pretenses, a false representation, or actual fraud, the creditor must show, by a preponderance of the evidence, that (1) the debtor made a representation, (2) the debtor knew the representation was false, (3) the representation was made with the intent to deceive the creditor, (4) the creditor actually and justifiably relied on the representation, and (5) the creditor sustained a loss as a proximate result of its reliance. *See In re Acosta*, 406 F.3d 367 (5th Cir. 2005). Concealment of or silence regarding a material fact can constitute a fraudulent misrepresentation. *See Mercer* at 404; *see also Acosta* at 372. A misrepresentation need not be spoken; it can arise by conduct. *Mercer* at 404.

35. Villalba's conduct satisfies the elements of section 523(a)(2)(A). The knowing misrepresentation in this case, the first two elements, is unspoken. In discussing Nugent's claim under section 523 (a)(4), the Court set forth Villalba's fiduciary obligations and duties. Nugent is entitled to assume that Villalba would abide by such duties and obligations – that Villalba would recommend investments that were suitable for his circumstance and in his best interest. Villalba is charged with understanding and appreciating Nugent's needs and objectives. Nugent's assumed expectation is the representation. Such "representation" was false as Villalba failed to fulfill his responsibilities. The Court can easily infer that, at the time the relationship between Villalba and Nugent arose, Villalba intended to place Nugent's savings in risky and improper investment schemes. Villalba's conduct in this regard is egregious. It is inconceivable to the

Court that a licensed securities broker would lose all of a customer's savings.

36. The deception arises from Villalba taking Nugent's funds that were entrusted to him and investing them in the fashion that he did. Had he explained to Nugent that he intended to invest Nugent's savings in the manner that he did, and that he would potentially cause Nugent to lose his life savings, Nugent would have obviously avoided Villalba. Nugent, therefore, relied upon Villalba fulfilling his duties and obligations as a licensed securities broker.

### Villalba's Estoppel Defense

37. Villalba, appearing pro se, denied in his answer that he committed fraud and, in effect, argues that Nugent is estopped from asserting fraud as the arbitration award makes no specific finding of fraud.

38. The Court, as set forth above, concludes that Villalba's conduct satisfies the elements of section 523(a)(2)(A).

39. The party asserting collateral estoppel bears the burden to justify its application. *See In re Zangara*, 217 B.R. 26, 32 (Bankr. E.D. N.Y. 1998) (". . . the party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment.").

40. The arbitration award does not provide factual findings or legal conclusions; it merely provides a statement of the claims and defenses asserted, the relief requested by the parties, a procedural history (under "Other Issues Considered and Decided"), and the final award. *See* Pl.'s Ex. 20. In addition, the transcript of the arbitration was not provided to the Court.

41. To the extent that Villalba has raised a defense of collateral estoppel, the Court concludes that he has failed to meet his burden to justify its application and therefore rejects the application of collateral estoppel in this case. *See Universal American Barge Corp. v. J-Chem,*

*Inc.*, 946 F.2d 1131 (5th Cir. 1991) (Trial court may, in its discretion, apply collateral estoppel from arbitral findings "at least when the arbitral pleadings state issue clearly, and the arbitrators set out and explain their findings in a detailed written memorandum."); *see also In re Clayton*, 168 B.R. 700, 708 (Bankr. N.D. Cal. 1994) (Court rejected creditor's request in a dischargeability complaint to apply collateral estoppel offensively from an arbitration award that did not contain the factual and legal determinations that lead to the award.).

## Conclusion

42. The amount of the debt is not disputed. Nugent has established by a preponderance of the evidence that Villalba's debt to him in the amount of $264,905.67 must be excepted from discharge under both section 523(a)(4) and (a)(2)(A) of the Bankruptcy Code.

43. If appropriate, these conclusions of law shall constitute findings of fact.

### End of Findings of Fact and Conclusions of Law ###